Whyte, J.
delivered the opinion of the Court. Daniel Allen was tried at the Circuit Court of Green County, September term, 1826, for the murder of James Houston. He was found not guilty of murder, but guilty of manslaughter; and judgment was rendered that he be branded, imprisoned six months, and pay the costs of the prosecution. In the transcript of the record sent up to this Court, after the entry of the judgment, is the following entry or memorandum: “ In this case the defendant, by his counsel, moved the. Court to postpone the execution of the sentence until the next term of this Court, and to take bail for his appearance at said Court, to the end that he might apply to the governor for a pardon ; which motion the Court overruled, and ordered the sentence to be put in execution. From which order overruling said motion, and from the judgment of the said court, the defendant prayed an appeal to the Court of Errors and Appeals,” &c. The transcript then shows, that Daniel Allen entered into a recognizance with [295] security, to appear here at this term of this Court, and that the appeal was granted.
This cause coming on, on a former day of the term of this Court, to be heard upon the appeal in the nature of a writ of error, the judgment of the Circuit Court was affirmed. It was then moved, by his counsel, that the plaintiff in error, Daniel Allen, have the execution of said judgment respited, for the purpose of permitting him to apply to the governor for a pardon, and that in the mean time he may be admitted to bail.
This application is now made to this Court, upon the following grounds, by the counsel: 1st. That the motion made in the Court below, for time to apply for the pardon, set forth in the memorandum in the transcript, ought to have been sustained by the judge, for two reasons. 1st. Upon the intrinsic circumstances of the case appearing upon the trial of the cause; and 2d. Upon the constitutional privilege of every citizen, guaranteed to him by the sixth section of the second article of the Constitution; which says, “ He (the governor) shall have power to grant reprieves and pardons after conviction, except in cases of impeachment. .
*607 2d. Upon a statement now presented of the evidence purported to have been given at the trial in the Court below, verified in this Court, by the affidavit of two persons, as being substantially the testimony which was given on the trial below ; which statement is further certified by three very respectable members of the bar, who were counsel- for Allen on the trial, to be a true and correct statement of the testimony given in the cause; and that the said Daniel Allen is a high-minded, honorable, industrious man, and that he is a fit subject for executive clemency.
Upon the first of these grounds, that this Court should now sustain the application for time, &c. because the judge of the Circuit Court ought to have sustained the motion below, this Court has to observe that it is a revising court, and acts upon the record properly presented to it; the memorandum and the matter thereof is no part of' the record brought up to this Court, it belongs, not to the cause, it forms [296] no part of the process, pleadings, or judgment. To have constituted á part of the record it ought to have been excepted to, by a bill of exceptions, sealed by the ju.dge, and made a part of the record. Questions of this kind have often come before this Court; as, for instance, upon affidavits presented to the Court below, and filed among the papers of the cause ; but no exception to the judgment, or order of the Court upon the matter of them, appearing by the bill of exceptions, they could not be noticed or acted upon .by this Court. An instance of which occurred this term, in the case of Gardenhire, where an affidavit, for a change of venue, was filed among the papers, but not incorporated by a bill of exceptions with the record. This Court held they could not notice it.
Suppose the matter of the memorandum in the transcript, had, by bill of exceptions, formed-a part of the record, the question would have been raised, whether this Court would or ought to examine the matter, for the purpose expressed, viz. giving time to apply for a pardon, as being the exercise of the discretion of the Circuit Court, as founded upon and directed by the circumstances appearing upon the trial, and the matter appearing in and by the same P
This Court has examined into the exercise of the discretion of the judge below, in this case, to wit, where a new trial has been refused by him, upon the weight of testimony. This Court has said, contrary to the practice of the Supreme Court of the United States, in a like case, that it will examine into, and control the discretion of the Court below, in this, that if the ■weight of testimony greatly preponderates in favor of the application, against the verdict given, it will grant a new trial. This Court has been, in part, influenced to adopt this practice, from the analogy to the English practice, of the judge at nisi prius saving the like question for the consideration and opinion of the whole court in Westminster Hall. .
*608 But it must be noticed that the discretion exercised by the judge below, and desired by the present application to be controlled by the Court here, is to a different point, regarding a different object, than the right or wrong conclusion [297] of the jury upon the case submitted to them. But viewing the case altogether aside from the correctness of the verdict and the further interference of a court in that respect, and as directed to the view, examination, and exercise of the constitutional provision of the Governor, as á fit object or otherwise for pardon, is, perhaps, what the judge below had nothing to do with; and of course this Court, for the same reason, is in the same situation. But upon this no opinion is given, as it is not called for by the case before them.
The next question, can this Court interfere upon the second ground, the statement of facts above noticed, prepared at this term since the affirmance of the judgment of the Circuit Court, and verified by affidavit made in this Court ? This affidavit is intended to supply the defect, or rather absence, of the matter in the record already noticed, to wit, of the facts of the case, as they appeared upon the trial; and it is upon this contended by the counsel that the Court have the discretion to grant or refuse. If this Court have a discretion, they think it ought not to be called into action by an after statement, ex parte, when the Attorney-General had no opportunity of examining into or contesting its correctness. This Court will here observe that these remarks are not called for from any, the most distant, allusion to the probable incorrectness of the statement now presented; they have an undoubted belief of and confidence in its correctness ; but, for the sake of the principle, and the avoidance of those evils in the administration of justice which such an example, followed by a practice, might be intro-ductive of.
The remaining ground for the success of this application to the Court is the Constitution. By it “ the Governor shall have power to grant reprieves and pardons after conviction, except in cases of impeachment.” Here the power to grant a reprieve or pardon is unquestionably gi-ven to the Governor. But this power would be given in vain, unless an opportunity was given for its exercise by him. The means of exercising the power must also then come within the Constitution, and be a constitutional right. The means, [298] therefore, must be a right in the convicted citizen to be afforded by this Court, in those cases where the final judgment, after conviction, is rendered' thereupon. This right must, of necessity, supersede the immediate execution of the judgment, or the carrying the same into effect, as far as is reasonably necessary, under the circumstances, for its exercise, or the making the application to the governor.
It is asked from this Court, by the plaintiff in error, as the means of enabling him in the present case to exercise his constitutional right to suspend, *609 until the next term of this Court, the execution of the judgment, and in the mean time to admit him to bail.
•For his admission to bail, his counsel have cited and relied upon Hawkins, P. C. book 2, ch. 15, § 40, where it is said: “Also it seems that the Court of King’s Bench, or justices of jail delivery may bail a person convicted of manslaughter, or, as some say, of any other • felony, for which he after-wards gets the king’s pardon ”; and the same book, ch. 8, § 65, in these words : “ Also if a man be convicted of manslaughter before such justices (speaking of justices of jail delivery), against plain evidence, it is said they may bail him to the next sessions of jail delivery, in order to purchase his pardon in the mean time.”
This Court have little doubt but that in cases of manslaughter, the execution of the judgment ought to be suspended, for the burning in the hand is the most important part solicited as the object of pardon, which, if inflicted, the benefit of the privilege would be much impaired.
That time should be given him here for making the application is more necessary than in England; for there a pardon may be applied for before conviction, and is often granted; but here, by the Constitution, the pardon cannot be granted until after conviction.
No reason has been shown, or even offered, why, in this case bail should not be taken for the forthcoming of the party, at the time that may be directed by the Court; and in common cases, where the party can give bail, reasonably to secure his appearance that he may be forthcoming, and subject to the sentence of the law, is all that the law requires. [299] If bail cannot be given, or, what is the same thing, sufficient bail, then it would be the duty of the Court to direct him to be kept in jail for safe custody during the time allowed for the procuring of his pardon.
Let execution of.the judgment in this case be suspended until the further order of this Court, except as to the costs, for which an execution may now issue; and that the plaintiff in error enter into recognizance, himself in the sum of $ 5,000, with five securities, each in the sum of $ 1,000, that he will appear, &c.